IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SANDRA CONNELLY,<br>          Plaintiff,<br><br>v<br><br>LANE CONSTRUCTION CORPORATION,<br>          Defendant. | )<br>)<br>)<br>)  2:13-cv-1402-TFM<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

Now pending before the Court is DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT UNDER FEDERAL RULE 12 (ECF No. 13), filed by Lane Construction Corporation ("Lane") with brief in support. Plaintiff Sandra Connelly ("Connelly" or "Plaintiff") filed a brief in opposition to the motion (ECF No. 15). Defendant filed a reply to Plaintiff's brief in opposition (ECF No. 16), and the matter is ripe for disposition.

**Factual and Procedural Background**

Connelly was employed by Lane as a union member truck driver from May 2006 until she was laid off in October 2010. (Am. Complaint ¶ 8, 11). Lane employed a total of seven (7) truck drivers at its Pittsburgh plant location during this time period. (Am. Complaint ¶ 10). Connelly ranked fifth in seniority and was the only female driver. (Am. Complaint ¶ 11). Connelly was involved in a romantic relationship with one of the other truck drivers, Mark Nogy ("Nogy"), which relationship ended in May 2007. (Am. Complaint ¶ 13-14). She alleges that during the summer of 2007, she was subjected to daily name-calling, belittling, and harassment from Nogy and her other co-workers. (Am. Complaint ¶ 16, 19-21). Connelly complained to Lane supervisors Jeremy Hostetler and Tim Holleran. (Am. Complaint ¶ 17, 24). As pled in the

Amended Complaint, Lane management was responsive to Connelly. In 2007, Lane executives Charles Ames ("Ames") and Mike Hindt met with Connelly regarding her complaints about Nogy. (Am. Complaint ¶ 26). Following the meeting, Nogy was suspended from work for three days for his treatment of her. (Am. Complaint ¶ 29).

Connelly also reported truck drivers drinking on the job to her supervisor. (Am. Complaint ¶ 33). In 2009, Connelly learned that Lane provided an Ethics Line. She reported harassing treatment from Nogy to the Ethics Line. (Am. Complaint ¶ 35-36). She alleges that she called the Ethics Hotline a number of times due to men drinking on the job and discriminatory treatment. (Am. Complaint ¶ 38). The Ethics Line representative encouraged her to continue to report complaints. (Am. Complaint ¶ 37).

In May 2010, Connelly alleges she was sexually harassed by Lane foreman George Manning ("Manning"), who came close to her and stated "one day I'm going to kiss you." Connelly reported this incident to her supervisor and the Ethics Line and requested a transfer to a different job site. (Am. Complaint ¶ 40-43). Lane granted this request and Connelly was transferred to another job site. (Am. Complaint ¶ 45). Connelly conclusorily claims that her relationship with supervisors and male truck drivers became increasingly strained throughout 2010 and that she continued to make numerous complaints to the Ethics Line as well as Lane management. (Am. Complaint ¶ 46). However, she has not pled any specific facts regarding this time period.

In October 2010 supervisor Jerry Schmittein allegedly wanted Plaintiff to drive a truck that had a flat tire and steering problems. When Plaintiff refused, Mr. Schmittein allegedly became "incensed" and asked her "are you refusing to work?" (Am. Complaint ¶ 47). Connelly contacted Lane executive Ames, who told her to leave the work location that day. (Am.

Complaint ¶ 48). Truck drivers were traditionally laid off at the end of the fall construction season each year and rehired the following spring. (Am. Complaint ¶ 6). Connelly alleges that she was laid off in October 2010 before the other truck drivers. (Am. Complaint ¶ 49).

The Complaint is silent regarding any contacts between the Plaintiff and Lane during the six-month period from October 2010 through April 2011. (Am. Complaint ¶ 52). Connelly has pled no facts as to any protected activity, alleged harassment, or alleged retaliation during this time.

In April and May 2011, Connelly claims that she witnessed a number of her co-workers at the job site. (Am. Complaint ¶ 52). Connelly then contacted Lane to ask why she had not been recalled. Ames responded that no work was available. (Am. Complaint ¶ 52). However, Connelly observed that the four drivers with more seniority had been recalled; that Mike Rupert, one of the drivers with less seniority, was working as a general laborer (non-trucker);[1] and that Casey Allen, the other driver with less seniority, had been recalled to drive the "tack truck." (Am. Complaint ¶ 55-60). The tack truck was the only vehicle which Connelly was not qualified to drive. (Am. Complaint ¶ 60). Her training on the tack truck had been postponed and never rescheduled. (Am. Complaint ¶ 70-71). The previous year, Donny Smail, the most senior driver, had driven the tack truck. (Am. Complaint ¶ 61).[2] Connelly also observed "rental trucks" from other companies being used and saw laborers driving trucks. Previously, Lane had not rented trucks or assigned laborers to drive trucks until all union drivers had been called back to work. (Am. Complaint ¶ 65-66). In summary, Connelly theorizes that Lane manipulated the recall process and truck assignments to exclude her from recall. (Am. Complaint ¶ 72).

---

[1] Connelly alleges that she was not given the same option to return as a general laborer. (Am. Complaint ¶ 58).
[2] Ames explained that Smail was allowed to choose a different truck, which is contrary to the union contract. Lane had not permitted truck drivers to choose which truck they operated based upon seniority. The collective bargaining agreement provides "[d]rivers in accordance with their qualifications and seniority shall be offered the highest rate of classification of work but cannot choose their equipment or work assignments." (Am. Complaint ¶ 63).

Connelly filed a union grievance regarding the failure to rehire her, which was denied. (Am. Complaint ¶ 74-75). On October 7, 2011, she dual-filed a charge of discrimination with the EEOC and PHRC. (Am. Complaint ¶ 76). Although the Amended Complaint alleges that the EEOC charge was filed on October 7, 2010, that appears to be a clear typographical error.[3] The EEOC charge was filed in October 2011. The EEOC issued a right to sue letter on June 28, 2013. (Am. Complaint ¶ 85). Plaintiff filed her original Complaint with this Court on September 26, 2013, in which she alleged disparate treatment, hostile work environment, and retaliation claims under Title VII and the PHRA. Lane filed a motion for partial dismissal of Plaintiff's claims for acts that occurred prior to December 11, 2010. On March 11, 2014, this Court dismissed all claims except for Defendant's failure to rehire Plaintiff in April 2011. The Court held that there was nothing in the record to support a continuing harassment/retaliation theory.

The Court granted Plaintiff's leave to amend her Complaint, although it commented that it harbored significant doubts and warned Plaintiff that any amendment must be able to plead sufficient causal links. Plaintiff filed a four-count First Amended Complaint on March 25, 2014 under Title VII and PHRA, alleging disparate treatment on the basis of her gender and retaliation for making complaints of discrimination.

**Standard of Review**

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of a Complaint, which may be dismissed for the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Upon review of a motion to dismiss, the Court must accept all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor

---

[3] On page 2 of its Memorandum Opinion of March 11, 2014, the Court pointed out this error in the original Complaint. Nevertheless, this error remains in the Amended Complaint.

4

of the plaintiff. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d Cir. 2011), *cert. denied*, 132 S. Ct. 1861 (2012) (citing *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010)). However, as the Supreme Court of the United States has made clear in *Bell Atlantic Corp. v. Twombly*, such "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. 554, 555 (2007).

The Supreme Court later refined this approach in *Ashcroft v. Iqbal*, emphasizing the requirement that a complaint must state a plausible claim for relief in order to survive a motion to dismiss. 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 555). Nevertheless, "the plausibility standard is not akin to a 'probability requirement,'" but requires a plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 555).

To determine the legal sufficiency of a complaint after *Twombly* and *Iqbal,* the United States Court of Appeals for the Third Circuit instructs that a district court must take a three step approach when presented with a motion to dismiss for failure to state a claim. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 n.7 (3d Cir. 2010) (noting that although *Iqbal* describes the process as a "two-pronged approach," it views the case as outlining three steps) (citing *Iqbal*, 556 U.S. at 675). First, "the court must "tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* at 130 (quoting *Iqbal*, 556 U.S. at 675) (alteration in original). Second, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Third, "'where there are well-pleaded factual allegations, a court should assume their veracity and then determine

whether they plausibly give rise to an entitlement for relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Accordingly, the Court must separate the factual and legal elements of the claim and "accept the factual allegations contained in the Complaint as true, but [ ] disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements." *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) (citing *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555-57; *Burtch*, 662 F.3d at 220-21). The Court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (citing *Iqbal* 556 U.S. at 678). The determination for "plausibility" will be "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id*. at 211 (quoting *Iqbal*, 556 U.S. at 679).

However, nothing in *Twombly* or *Iqbal* changed the other pleading standards for a motion to dismiss pursuant to Rule 12(b)(6) and the requirements of Rule 8 must still be met. *See Phillips v. Co. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal citations omitted). The Supreme Court did not abolish the Rule 12(b)(6) requirement that "the facts must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on those merits." *Phillips,* 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 553). Rule 8 also still requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 677-78 (citing Fed. R. Civ. P. 8(a)(2)). While this standard "does not require 'detailed factual allegations,' [ ] it demands more than an unadorned, the-defendant-unlawfully-harmed-me

accusation" and a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 544-55). Simply put, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

**Legal Analysis**

Defendant contends that Plaintiff's Amended Complaint does not cure the deficiencies in her original Complaint, because her claims are still based on events prior to December 11, 2010, which are time-barred because Connelly cannot show a continuing violation. Additionally, Defendant alleges that Plaintiff failed to plead with specifity and failed to plead a causal connection between her protected activity (complaints of harassment to management and the Ethics Line) and the failure to rehire her.

Plaintiff responds that the time-barred facts are not intended to state separate or continuing claims, but are merely used to support her claims for disparate treatment and retaliation related to Lane's failure to rehire her. Plaintiff also contends that she adequately pled claims for both retaliation and disparate treatment. In particular, Plaintiff argues that she is not required to set forth a causal connection; that she does not need to plead that she was qualified to drive the tack truck; and that she does not need to plead temporal proximity between her complaints and Lane's failure to rehire her.

As an initial matter, as explained in the March 11, 2014 Memorandum Opinion, procedural remedies must be exhausted prior to pursuing litigation under Title VII or the PHRA, and a plaintiff must file a charge of discrimination with the EEOC within three hundred (300) days of the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1). Claims under the

7

PHRA must be filed within one hundred and eighty (180) days of the alleged unlawful employment practice. 43 P.S. § 959(h). Thus, all claims except for the alleged failure to rehire Connelly in April 2011 are time-barred. Plaintiff appears to acknowledge this law and contends the acts before December 11, 2010 are merely factual allegations, not claims, and they are meant to "support her timely filed claims for disparate treatment and retaliation." (Pl. Br. at 7). [4]

Title VII and PHRA claims have the same legal standards and will be analyzed together. *Slagle v. County of Clarion*, 435 F.3d 262, 265 n. 5 (3d Cir. 2006).

### A. Disparate Treatment

Disparate treatment is a specific decision to treat someone "adversely" because she is a member of a protected class. *Watson v. Fort Worth Bank and Trust,* 487 U.S. 997, 985-86 (1988). Disparate treatment cases ask the trier of fact to determine if the employer has treated someone less favorably based on their gender (protected class), not whether the employer's otherwise nondiscriminatory policy has some adverse effect on members of the protected class. *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983) (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978)). A plaintiff must prove that the employee's protected class played a determinative part in the employer's decision. *Ricci v. DeStefano,* 557 U.S. 557, 577 (2009).

Employment discrimination cases without direct evidence use the McDonnell Douglas analysis to determine burdens of proof. *McClung v. Songer Steel Services, Inc.*, 2014 WL 793133 at *5. The analysis employs three steps: (1) the plaintiff must establish a *prima facie* case of discrimination; (2) if discrimination is established, the burden shifts to the defendant who must "articulate a legitimate, nondiscriminatory reason for treating the plaintiff in an adverse

---

[4] Although Plaintiff's claims are time-barred, the Court recognizes that past acts may be relevant background in Title VII cases. *See e.g., National RR Passenger Corp. v. Morgan,* 536 U.S. 101, 113 (2002).

manner;" and (3) if the defendant meets this burden, the plaintiff then must show the defendant's reason is merely pretext for employment discrimination, i.e., "a discriminatory animus was the real reason for the adverse employment action." *Id.* So, Connelly must prove that Lane's asserted reason for not re-hiring her, i.e., lack of work, was a pretext for gender discrimination.

The elements of a prima facie case of an employment discrimination disparate treatment claim are: (1) the plaintiff belongs to a protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action despite being qualified; and (4) under circumstances that raise an inference of discriminatory action. *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003). The Court recognizes that the test remains flexible and the burden is not onerous at the motion to dismiss stage. *Id.* at 798.

The Court accepts that Plaintiff has satisfied elements one, two, and three, but she has failed to plead facts sufficient to raise an inference of gender discrimination. The only adverse action by Lane that occurred during the 300-day period was the failure to rehire Connelly in April or May 2011. Plaintiff has not pled any plausible causal connection between her gender and Lane's decision not to rehire her.

As an initial matter, the Amended Complaint is extremely vague and conclusory. Connelly fails to plead who at Lane made the decision to not recall her. The decision-makers were presumably Lane executives. There are no allegations that Lane management was anti-female. Indeed, she had been employed by Lane for many years. The Amended Complaint pleads that Lane management was responsive to her reports of harassment. Plaintiff only pleads that coworkers harassed her years earlier. She has not pled any connection between the alleged harassers and those who made Lane's decisions in its recall process. In sum, Plaintiff's Amended

Complaint failed to allege who the decision-makers were and failed to plausibly allege that Lane failed to rehire her because she was female.

The last incident of alleged sexual harassment was in May 2010. Even though that incident was rather mild (a supervisor said he "was going to kiss her someday"), the Amended Complaint reflects that Lane supported Connelly and moved her to a new location. That incident was four months before her layoff, during which time Plaintiff continued working for Lane, and eleven months before the alleged failure to rehire. There is no plausible causal connection between the May 2010 incident and the April 2011 failure to rehire.

Plaintiff did allege an incident which occurred in October 2010 in which she refused to drive a truck that allegedly had a flat tire and steering problems. She reported this incident to Lane management and was asked to leave the site that day, then laid off thereafter. However, this incident had nothing to do with gender discrimination; it was a safety issue. *See Slater v. Susquehanna County*, 613 F.Supp.2d 653, 663 (M.D.Pa. 2009) (holding that Plaintiff was not retaliated against when she made allegations of conduct threatening prisoners' safety because safety is not a protected Title VII activity). As noted above, Connelly cannot pursue a discrimination claim based on her layoff in October 2010. Even if that claim were timely, the only reasonable inference is that Lane acted due to her whistleblowing/safety complaint, not gender discrimination. The causal connection between her gender and the failure to rehire is even more remote.

Her allegations that Lane manipulated the recall process are basically speculative. Again, the Plaintiff's Amended Complaint is silent as to who at Lane was responsible for the alleged manipulation; and whether that person had anti-female animus. The record reflects that Plaintiff ranked fifth in seniority, and that a less-senior male was brought back as a general laborer, not as

a truck driver. Additionally, the other less-senior male was rehired to drive the tack truck, which Connelly lacked the training to operate.

In summary, Plaintiff failed to plead a sufficiently plausible inference that she was not rehired due to her gender. A claim based in speculation as to why Lane did not rehire her is not cognizable. *Johnson v. St. Luke Hospital*, 307 Fed. App'x. 670, 673 (3d Cir. 2009) (holding that Plaintiff did not set forth specific facts and her allegations were "purely speculative and conclusory").

### B.  Retaliation

Plaintiff, similiarly, fails to allege sufficient facts in her Amended Complaint to establish a plausible claim for retaliation for having reported gender discrimination. Title VII states:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C.A. § 2000e-3(a). To establish a prima facie case of retaliation under Title VII, a plaintiff must tender evidence that: "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in in the protected activity and the adverse employment action." *Moore v. City of Philadelphia*, 461 F.3d 331, 340-341 (3d Cir. 2006) (citing *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995).

The "protected activity" needed to support a Title VII retaliation claim must relate to the employment discrimination, i.e., it must be based on a charge of race, color, sex, religion, or national origin. *Slagle*, 435 F.3d at 266-67. Connelly's most recent report in October 2010

involved an unsafe truck Connelly refused to drive.[5] That incident was a safety issue with no gender component. Reports of safety issues do not constitute Title VII protected activity. *See Slater*, 613 F.Supp.2d at 663. Although Plaintiff's 2007 and 2010 claims of harassment could be considered protected activity under Title VII, her other complaints do not constitute protected activity.

The Amended Complaint fails to plead a causal connection between the failure to rehire Connelly in April 2011 and her alleged protected activity. There is no temporal proximity (as pled, her last report of sexual harassment was in May 2010, almost a year prior to the failure to rehire her), and no pattern of antagonism by Lane management. The Amended Complaint reflects that Lane did not retaliate for her past complaints. Plaintiff alleges that she continuously complained to her supervisors and the company Ethics Line for many years. Yet, in 2007, 2008, 2009, and 2010, Plaintiff was still rehired by Lane, even after these numerous complaints. There was no indication that Lane management was upset by the information. To the contrary, the Amended Complaint reflects that the Lane Ethics Line representative encouraged her to continue reporting. Lane also allowed her to transfer to a different location in 2010 and suspended Nogy for three (3) days due to his behavior in 2007.

Plaintiff appears to concede that she has failed to plead a sufficient causal connection but relies on *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002), for the proposition that she is not required to "set forth specific allegations regarding a causal connection between her complaints about discrimination and Lane's failure to recall her to work" because discovery is necessary to "unearth[] relevant facts and evidence" and a prima facie case for discrimination "should not be transposed into a rigid pleading standard." Our Third Circuit Court of Appeals

---

[5] Several of Connelly's earlier reports to Lane management similarly involved safety concerns (truck drivers drinking on the job) rather than sexual harassment.

stated in *Fowler* that *Swierkiewicz* has been repudiated by *Twombly* and *Iqbal*, "at least insofar as it concerns pleading requirements and relies on *Conley*." 578 F.3d at 211.[6] Even if Plaintiff need not have to make out a full prima facie case, the "plausibility standard" requires a plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully." *Twombly*, 550 U.S. at 555.

In conclusion, Plaintiff's allegations do not support a plausible claim that Lane's failure to rehire Connelly was due to disparate treatment based on her gender or due to retaliation for her alleged protected activity.

**Request for Leave to Amend**

Plaintiff again has asked for the opportunity to file an amended complaint if Lane's Motion to Dismiss were to be granted. Ordinarily, a plaintiff is generally free to amend a complaint. *See* Fed. R. Civ. P. 15(a)(2) ("court should freely give leave [to amend] when justice so requires."). However, a district court need not allow a plaintiff to amend if such amendment "would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)).

Plaintiff alleges that if granted leave to amend her complaint again, "she would bolster the factual allegations related to her retaliation and disparate treatment claims." She also alleges that she would set forth factual allegations regarding her complaints via the Ethics Line and supervisors throughout 2010; and additional factual allegations regarding Lane's recall process.

---

[6] There is a split among courts about whether *Swierkiewicz* remains good law. *Pedreira v. Kentucky Baptist Homes for Children, Inc.*, 579 F.3d 722 (6th Cir. 2009) held that *Twombly*'s holding does not conflict with *Swierkiewicz*. Many courts still question *Swierkiewicz*'s validity, however. *Trevino v. Austin Peay State Univ.*, 2012 WL 951488 at *3, n. 5 (M.D. Tenn. Mar. 19, 2012).

13

Plaintiff was on notice that she was required to set forth such allegations in her Amended Complaint. As stated in the Court's March 11, 2014 opinion:

> [T]he Court harbors significant doubts as to whether Connelly will be able to plead sufficient causal links to make out a continuing violation. For example, additional facts regarding her training opportunities (or lack thereof) and job assignments prior to October 2010 would not support a harassment theory . . . The Court cautions that if Connelly chooses to file an amended complaint, it will be important to assure that it contains sufficient factual allegations to render the claim(s) 'plausible' in compliance with the pleading standard set forth in *Twombly* and *Phillips*.

Plaintiff was given a full opportunity in which to overcome the flaws in her initial filing as specified by the Court. Despite this opportunity, she has again failed to set forth plausible claims. The Court will not provide an opportunity for a third bite at the apple, as it would be inequitable and likely futile. Accordingly, leave to amend the complaint again is DENIED.

Conclusion

In accordance with the foregoing Opinion, DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT UNDER FEDERAL RULE 12 (ECF No. 13) will be **GRANTED** and all of Plaintiff's claims will be **DISMISSED** with Prejudice.

An appropriate Order follows.

McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SANDRA CONNELLY,<br>    Plaintiff,<br><br>v<br><br>LANE CONSTRUCTION CORPORATION,<br>    Defendant. | )<br>)<br>)<br>) 2:13-cv-1402-TFM<br>)<br>)<br>)<br>)<br>) |

## ORDER OF COURT

AND NOW, this 28th day of July, 2014, in accordance with the foregoing memorandum opinion, it is hereby **ORDERED, ADJUDGED, and DECREED** that the Defendant's MOTION TO DISMISS PLAINTIFF'S COMPLAINT PERSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12 (ECF No. 13) is **GRANTED** and Plaintiff's Amended Complaint is **DISMISSED** with Prejudice. The clerk shall docket this case closed.

                   BY THE COURT:

                   s/Terrence F. McVerry
                   United States District Judge

cc: **Emily E. Town, Esquire**
   Email: etown@stembercohn.com
   **Maria Greco Danaher**
   Email: maria.danaher@ogletreedeakins.com
   **Samantha M. Clancy**
   Email: samantha.clancy@ogletreedeakins.com